[No. 4765.]

## BURKART ET AL. v. MEIBERG.

1. **Water and Water Rights—Statutory Construction—Waste Water.**

Mills' Ann. Stats., § 2269, providing that all ditches constructed for utilizing the waste, seepage or spring waters of the state shall be governed by the laws relating to ditches taking water from running streams, does not apply to a ditch built to catch the surface drainage from the irrigation of adjoining lands.—P. 189.

2. **Water and Water Courses—Surface Drainage—Appropriation.**

Defendants own and irrigate, from a natural stream, a tract of land, the natural slope of which is towards plaintiff's land. Plaintiff, by constructing a ditch upon her own land parallel with the common boundary line, has for many years intercepted the surface drainage from defendants' land and used it for irrigating her lands. Defendants later constructed upon their own land a ditch parallel to plaintiff's ditch, intercept such surface drainage, carry it around plaintiff's land, and irrigate another tract owned by them. Held, that plaintiff has not made a valid appropriation of such water as against defendants so as to prevent such action upon their part, and this is true although later defendants sell such adjoining tract of land, and continue to use such surface drainage, with the consent of the vendee, upon the tract of land below plaintiff.—P. 189.

*Appeal from the District Court of Delta County.*
*Hon. Theron Stevens, Judge.*

Action by Alvine Meiberg against J. M. Burkart and L. C. Burkart. From a decree in favor of plaintiff, defendants appeal. *Reversed and remanded.*

Messrs. KING & STEWART and Mr. R. M LOGAN, for appellants.

Mr. WILTON R. WELCH, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

The plaintiff and defendant own adjoining tracts of land, that of the plaintiff lying to the west of the

defendants, the natural slope of which is in that direction. The defendants own valid water rights in several ditches which have their headgates in a natural stream, and with the water thus diverted they had for a number of years irrigated their tract of land in question. In the process of spreading water upon it, some of it, by surface drainage, has passed across, and escaped therefrom, and reached the land owned by the plaintiff, and is there collected by her, and by means of an irrigating ditch, running parallel with the common boundary line, she has used this water in raising crops. Plaintiff first began such use about the year 1890, and so continued until the year 1903 when the defendants dug a parallel ditch, entirely upon her own land, a short distance from the boundary line, and thus intercepted the water which had been spread upon their land further to the east, but which, in the process of irrigation, had not soaked into or passed beneath the surface, and the water thus intercepted by the defendants they carried by means of a ditch around the plaintiff's body of land, and irrigated other lands owned by them to the west of plaintiff's tract.

The question for decision is whether the plaintiff has made a valid appropriation of waste water as against the defendants, or whether the defendants have a right, as against plaintiff, to intercept upon their own land, and before it passes therefrom, water which has been spread upon the same but not entirely consumed in the process of irrigation.

It will be observed from the foregoing statement that it is only to such water as has actually escaped from defendants', and reached her own, lands that plaintiff makes claim. Her ditch is built entirely upon her own lands, and the point of diversion of the waste water is also situate thereon, and not on defendants' property. She does not claim

water which, by seepage or percolation, first arises upon her own lands after having been applied to the irrigation of other lands, hence section 2269, Mills' Ann. Stats., does not apply.

It is manifest that, as against the defendants, the plaintiff has not made a valid appropriation of this alleged waste water. Just what constitutes waste water in every instance, we do not decide, but it is unquestionably true that, so far as concerns the right to make a valid appropriation of it, this water is not waste water so long as it remains upon the lands of the defendants, and does not, in any event, become such until it has escaped and reached the lands of others. The plaintiff certainly has acquired no vested right to compel the defendants to apply the waters, the right to the use of which they own, in such a way as that some of it will not soak into their own ground, but escape and pass from the surface on to her lands. The defendants have the right to change the place and manner of use, or reduce the quantity applied to their lands, so that no water whatever will escape and reach the lands of plaintiff. Whether the waste water, which the plaintiff for a series of years has utilized, has reached her land as a result of an improper or extravagant use which the defendants have made of their own appropriation, or whether it is the result of a proper method of irrigation due to the topography of the country, or some peculiar local condition, does not appear from the evidence, and is a matter of no material moment, so far as concerns the rights of the parties litigant. So long as, and while, the water which is applied by defendants to the irrigation of their lands remains upon the same, it is, as against the plaintiff, their exclusive property, whatever may be the rights of plaintiff as against some other claimant to it as waste water. Certainly, defendants could turn

into their laterals from the main ditch, lying further to the east, less water than they have been wont to do, or apply it in such a way that all of it will sink into the ground before it reaches the boundary line of the two tracts; or they might turn into their laterals the full head to which they are entitled, and before it reaches, and is applied to, the portion of the land immediately adjoining plaintiff's, turn all, or a portion of it, into some other lateral, or some other ditch, and use it upon an entirely different tract of land, and thus prevent a drop from running into plaintiff's ditch.

The plaintiff does not assert the right to the use of this water by virtue of an appropriation made from the same stream, or any of its tributaries, which are the source of defendant's supply. She cannot, therefore, like a prior or junior appropriator of water from the same stream, insist upon an economical use by the defendants of their appropriation. If the defendants have no present or immediate need of the full quantity of water which they may divert and use, they cannot waste it, but it is their duty to allow such portion as they have no immediate need for to remain in the natural stream, or, if diverted, to return such surplus again into the same stream, where, unless they then intend to recapture it, it becomes subject to diversion by the various ditches, in accordance with their numerical priorities.—*La Jara Creamery, etc., Co. v. Hansen,* 35 Colo. 105.

After defendants' appropriation has done duty to their own land, they cannot, even by grant, confer upon plaintiff the right to use it, or any of it, as against the superior claims of other appropriations from the same stream. By mere acquiescence on their part, to plaintiff's use, after waste water has passed from their lands, they have not estopped

themselves. thereafter to intercept and make benefi-
cial use of it before it escapes from their control.
And if such further use may be restrained by an-
other appropriator from the same source of supply,
plaintiff cannot assert any such equity.

The plaintiff makes the point, however, that be-
fore this action was begun, the defendants had sold
their adjoining tract of land, and consequently have
lost their rights to any surplus or waste water that
might be intercepted upon the same before it reaches
the lands of plaintiff.   If such sale was made, we do
not see how plaintiff's position is thereby strength-
ened.   Defendants did made a conditional sale of
their land before suit was brought, but no convey-
ance thereof was made, and will not be until the con-
ditions of the sale are fully performed by the vendee.
With that the plaintiff has no concern.   But, if a
sale and conveyance were so made, the rights of
defendants' vendee to this surplus or waste water
are paramount to the rights of plaintiff, for the
reasons hereinabove given, and the record shows
that the interception and use of it by defendants
upon another tract have been with their vendee's
consent.

Since, therefore, plaintiff has not, as against
defendants, made a valid appropriation of this so-
called waste water, or water which by surface drain-
age might, if not intercepted by them, reach her
lands, but, on the contrary, as between the parties
hereto, the superior right to its use, when collected
upon the lands of the defendants, and before it
reaches her lands, belongs to them, the decree of the
lower court awarding the prior right to the plaintiff
cannot stand.

No case has been called to our attention by coun-
sel, and we have found none, in which the important
question here discussed has been decided, but upon

general principles we think the conclusion reached is sound. The case most nearly in point is *Fairplay Hydraulic Mfg. Co. v. Weston,* 29 Colo. 125. There the defendant mining company had acquired by appropriation the right to the use of water for placer mining purposes. Subsequently the plaintiff's grantor went upon the placer ground and below the flume and dump of the placer mine constructed a ditch into which the water, after it had been fully utilized by the defendant for placer purposes, and before it had reached the natural stream, was diverted and used by plaintiff and his grantors to irrigate agricultural lands. While the defendant acquiesced in this action of the plaintiff and his grantor, it did so with the understanding that they should not assert, as against the defendant, any legal right thereto, or in any way interfere with the operation of the placer. At a still later date the defendant turned a large volume of water into its ditch and so used it in placer mining that it fouled the water at the point where the plaintiff had diverted the flow for the purpose of irrigation. The court held that the plaintiff was not entitled to any relief as against this last act of defendant, because plaintiff and his grantor must be considered mere licensees, and acquired no such rights to the use of water as would authorize relief by injunction restraining defendant from polluting it. So far as that case has any bearing upon the present one, it is in favor of the defendants.

There is another, and entirely distinct, matter of dispute between the parties concerning the attempt by the plaintiff to use certain other waters through the Bloxin ditch. The decision of the trial court respecting it was in favor of the defendants, and our investigation leads us to believe that it was right.

The decree of the lower court, therefore, should be reversed and the cause remanded with instructions to vacate so much of the former decree as bears on the rights of the parties to the so-called waste water, and to enter a new decree in favor of the defendants upon both points in controversy, and in accordance with the views expressed in this opinion.

*Reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE STEELE concur.